

FILED

DEC 27 2016

Clerk, U.S. District Court
District Of Montana
Helena

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| KEVIN BUDD, RAY LEE, MARTIN MANGAN, SHIRLEY MANGAN and KENNETH WALSH on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | No. CV-09-25-BU-SEH |
| vs. | |
| CARING FOR MONTANANS, INC., BLUE CROSS BLUE SHIELD of MONTANA, INC., HEALTH CARE SERVICES CORPORATION, INC., and JOHN DOES 3 through 20, | **OPINION AND ORDER** |
| Defendants. | |
| TYSON S. PALLISTER, | |
| Plaintiff, | |
| vs. | No. CV-09-62-H-SEH |
| CARING FOR MONTANANS, INC., BLUE CROSS BLUE SHIELD of MONTANA, INC., HEALTH CARE SERVICES CORPORATION, INC., and JOHN DOES 3 through 20, | |
| Defendants. | |
| This Document Relates To: BOTH ACTIONS | |

## Background

On August 26, 2016, Plaintiffs moved for Class Certification.[1] Defendant Caring for Montanans, Inc. ("CFM") responded on September 9, 2016.[2] Plaintiffs filed a reply.[3] Both CFM and Plaintiffs responded to the Court's Order[4] requesting additional information as to one of Plaintiffs' fiduciary duty claims.[5] A hearing on the motion was held on December 5, 2016. The matter is fully submitted.

This seven-year old action arises from CFM's (formerly known as Blue Cross Blue Shield of Montana, Inc. ("BCBSMT")) denial of medical benefits to Plaintiffs on the basis of policy exclusionary language subsequently deemed invalid by the Montana Supreme Court in *BCBSMT v. Montana State Auditor and Commissioner of Insurance*.[6] The exclusionary language essentially denied coverage if the insured was injured and the responsible party's automobile or premise liability insurance would apply. In an opinion entered on September 24, 2009, the *State Auditor* court found the exclusion to be invalid and did not

---

[1] Doc. 184.

[2] Doc. 189.

[3] Doc. 192.

[4] Doc. 198.

[5] Doc. 200 (CFM); Doc. 201 (Plaintiffs).

[6] 218 P.3d 475 (Mont. 2009).

comport with Montana law.

Multiple lawsuits were filed following the *State Auditor* decision. Both of the above-captioned matters were originally commenced in state court and removed to this Court, which, in turn, remanded all state law claims back to state court. State court class action litigation ensued. Proceedings in this Court were stayed pending resolution of the state court actions. After two interlocutory appeals, the Montana Supreme Court, on May 24, 2016, affirmed the state district court's approval of a Stipulation and Settlement Agreement ("Settlement Agreement") between BCBSMT and the state court class.[7]

This Court lifted its stay on July 5, 2016, to address any remaining claims solely within the jurisdiction of the federal courts under the Employee Retirement Income Security Act ("ERISA").[8] Plaintiffs Pallister, Walsh, and the Mangans are known members of the state court class. Plaintiff Budd was denied class membership for lack of standing because CFM had paid his claims in full shortly after he filed suit. Plaintiffs apprised the Court that Plaintiff Lee is not appropriately a party to this lawsuit.[9] He will be dismissed. Plaintiffs now seek certification for two different classes.

---

[7] *In re BCBSMT*, 372 P.3d 457, 465 (Mont. 2016).

[8] 29 U.S.C. §§ 1001–1461.

[9] Doc. 193 at 7; Doc. 194 at 9.

3

## Discussion

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"[10] "In order to justify a departure from that rule, 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'"[11] The Court has broad discretion in deciding whether to certify a class.[12] In exercising its discretion, the Court may need "'to probe behind the pleadings before coming to rest on the certification question' . . . ."[13] This probe may well "entail some overlap with the merits of the plaintiff's underlying claim."[14]

Federal Rule of Civil Procedure 23 governs class certification. Its application involves distinct sets of requirements and accompanying analyses: Rule 23(a) requirements and Rule 23(b) requirements. The party seeking class action bears the burden of demonstrating he or she has met the requirements of

---

[10] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

[11] *Id.* at 348–349 (quoting *East Tex. Motor Freight System, Inc. V. Rodriguez*, 431 U.S. 395, 403 (1977)).

[12] *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

[13] *Wal-Mart*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).

[14] *Id.* at 351.

both.[15]

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."[16] The Rule has four elements:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

The four elements are commonly referred to as "numerosity," "commonality," "typicality," and "adequate representation," respectively.[17] All four Rule 24(a) elements must be found to be present before proceeding to the Rule 23(b) analysis.

### I. Certification for Class (a) is Improper because Plaintiffs Lack Standing to Assert the Proposed Class's Claims

Article III of the United States Constitution gives this Court jurisdiction only over "cases and controversies."[18] "[T]he doctrine of standing serves to

---

[15] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

[16] *Wal-Mart*, 564 U.S. at 349.

[17] *Id.* at 349.

[18] *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990).

5

identify those disputes which are appropriately [to be] resolved through the judicial process."[19] To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[20] "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[21] "The party invoking federal jurisdiction bears the burden of establishing [each of] these elements."[22]

Plaintiffs provide the following definition for its first proposed class, identified as Class (a):

> (a) CFM state class action members who were ERISA insureds and have breach of fiduciary duty claims against CFM for: (1) failing to provide notice regarding the settlement in [*Diaz v. BCBSMT*[23]]; and (2) proposing to give ERISA beneficiaries' funds to Montana Healthcare Foundation.[24]

---

[19] *Id.* at 155.

[20] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)).

[21] *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560).

[22] *Lujan*, 504 U.S. at 561 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Warth v. Seldin*, 422 U.S. 490, 508 (1975)).

[23] 267 P.3d 756 (Mont. 2011).

[24] Doc. 185 at 10.

6

The Court will address each. However, neither alleged action by CFM ((1) or (2)) gives rise to a cognizable injury to Plaintiffs.

Plaintiffs allege a breach of fiduciary duty arose when CFM failed to tell the state court class members of the *Diaz* case, in which plaintiffs received 100% of their wrongfully denied benefits. They argue such a duty is derived from the duty of loyalty set forth in 29 U.S.C. § 1104(a).[25] However, § 1104(a), i.e. the "Prudent man standard of care," primarily sets forth a fiduciary's duties in handling plan assets such as minimizing expenses of administering the plan, diversifying plan investments, and managing the plan in accordance with the governing documents. It does not impose any duty to disclose information of any sort to plan participants or beneficiaries.

On the other hand, § 1021 of ERISA imposes on fiduciaries of a plan the duty to disclose and report certain information to plan participants and beneficiaries. Such information includes summary plan descriptions and annual financial reports. It does not include information regarding a lawsuit in which the participants and beneficiaries have no interest. The *Diaz* class was comprised solely of State of Montana employees.[26] None of the Plaintiffs in this case were

---

[25] *See id.* at 15–17.

[26] 267 P.3d at 159 ("[I]t is clear the members of the class will be individuals insured under the State plan").

7

state employees or participants in the *Diaz* plan. In other words, the outcome of *Diaz* was entirely irrelevant to Plaintiffs' recovery. CFM had no duty to disclose anything about *Diaz* to Plaintiffs.

Even if there were some duty to disclose *Diaz*, Plaintiffs fail to show how a failure to disclose caused them any injury. Plaintiffs may understandably feel slighted by the fact they recovered 50–75% of their denied claims, while *Diaz* class members recovered 100%. But the bottom line is that the Montana Supreme Court in *In re BCBSMT* approved the Settlement Agreement as fair and reasonable.[27] This Court should not and will not now engage in a collateral attack of that decision.

CFM had no fiduciary duty to disclose to Plaintiffs the *Diaz* case. Even if they did, Plaintiffs were not injured by a lack of disclosure. As such, Plaintiffs have no standing to assert the claim. Such claim cannot serve as the basis for a class action lawsuit.

The second claim of Class (a) is that CFM's potential transfer of $150,000,000 to the Montana Healthcare Foundation ("MHF") breaches a fiduciary duty owed to Plaintiffs. Curiously lacking from Plaintiffs' complaint is any mention of this now asserted fiduciary claim.[28] Plaintiffs' failure to plead it

---

[27] 372 P.3d at 465.

[28] *See* Doc. 181.

8

procedurally bars its use as a basis to certify a class. The claim fails on substantive grounds as well.

The crux of Plaintiffs' argument is that they should recover the remaining 25–50% of their claims before a third-party, MHF, receives anything. Plaintiffs assert CFM is proposing to give away "state class action members' money."[29] However, those funds do not belong to Plaintiffs. Under the Settlement Agreement, Plaintiffs are entitled to 50–75% of their claims and no more.

Settlements necessarily involve compromise by all parties. An unfortunate reality of many class action settlements is that individual claims may be compromised in a class settlement process approved by the court. Moreover, all of the state court class action members were given the notice and opportunity required by the Due Process Clause to opt out of the class and any future settlement. None of them decided to do so or to pursue individual claims.[30] They cannot now be heard to complain.

ERISA imposes certain fiduciary duties on those who manage plan participants' assets.[31] Plaintiffs consistently cite to and argue from cases

---

[29] Doc. 185 at 15.

[30] *Pallister v. BCBSMT*, 302 P.3d 106, 107–08 (Mont. 2013).

[31] *See, e.g.*, 29 U.S.C. §§ 1104, 1106.

9

concerning ERISA *pension* plans. This case involves an ERISA "welfare plan,"[32] specifically a health care plan. The distinction, although not discussed at length by either party to this lawsuit, is paramount and appears directly in numerous provisions of ERISA.[33]

In its most basic form, ERISA pension plans function as follows: the employee or employer makes contributions into the plan; fiduciaries (trustees), who are bound by duties set forth in ERISA, manage the plan's assets by making investments and by paying administration costs and related expenses. Eventually, and generally after retirement, the employee receives regular payments out of the plan. Nothing of that sort happened here. Plaintiffs are never going to receive a pension-type payment based upon the premiums paid for their insurance policies. Nor is there any allegation that their plans maintained a fund to pay claims.

The Plaintiffs, through their several employers, bought medical insurance from CFM. The asset the Plaintiffs received in exchange for the premiums paid was the insurance contract. Premiums paid to CFM became the property of CFM. It was under no ERISA-based duty to consider the premium money paid to CFM

---

[32] 29 U.S.C. § 1002(1).

[33] *See, e.g.*, 29 U.S.C. § 1103(b)(1), (2) (ERISA section mandating the formation of a trust to hold all assets of an employee benefit plan *except* "any assets of a plan which consist of insurance contracts or policies issued by an insurance company . . . [and] any assets of such an insurance company or any assets of a plan which are held by such an insurance company.")

10

as anything other than its property. Premiums paid to CFM upon receipt by CFM belonged to CFM, not to the Plaintiffs or to their plans.

The Montana Supreme Court determined that Plaintiffs in the court-approved settlement were entitled to 50–75% of the benefits which had been withheld due to the exclusionary language. Plaintiffs' claim to anything more is without justification. Whatever CFM may do with the $150,000,000 cannot possibly injure Plaintiffs because they have no "legally protected interest" in those funds.[34] Plaintiffs simply have no standing to assert the second breach of fiduciary claim, and it cannot serve as a basis for certification of a class.

The Court has a duty to independently assess standing in all cases before it. Even the most gentle of probing into Class (a)'s claims reveal their fatal infirmity: Plaintiffs lack standing to assert such claims.

## II. Certification for Class (b) is Improper because Numerosity and Typicality are not Present

The class definition of Plaintiffs' proposed second class is Class (b):

(b)  CFM insureds who, submitted claims on or after March 1, 2001, to the present (or on whose behalf claims were submitted) to CFM for medical expenses arising from the automobile/premises accidents where CFM failed to pay the claim due to the possible availability of automobile or premises liability insurance, but where CFM did not apply the denial

---

[34] *Lujan*, 504 U.S. at 560.

11

codes used to define the CFM state class action.[35]

Plaintiff Budd is the only person proposed as class representative for this class.

"The typicality requirement is designed to assure that the named representative's interests are aligned with those of the class."[36] The most glaring deficiency with Class (b) is that Budd does not qualify as a class member, let alone a class representative. It is undisputed that Budd's claims were paid in full. CFM has not "failed to pay the claim" as contemplated by the proposed class definition.[37] Budd's only interest in this lawsuit is to seek recovery of attorneys' fees and interest.[38] Any members of proposed Class (b) would be pursuing benefits CFM allegedly failed to pay. Budd's interests are not aligned with those of the proposed class. As such, typicality is not present.

Plaintiffs have likewise failed to prove numerosity for proposed Class (b). The Settlement Agreement's definition of "Class" includes the following:

(a) BCBSMT insureds under policies issued or renewed in the State of Montana, who (i) were injured in an automobile or

---

[35] Doc. 185 at 11.

[36] *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

[37] Doc. 185 at 11.

[38] *See* Doc. 181 at 12.

12

premises accident; and (ii) submitted claims for dates of service on or after December 29, 2000 through December 31, 2008 (or on whose behalf claims were submitted) to BCBSMT for medical expenses arising from the automobile and/or premises accident where BCBSMT's auto and/or premises exclusions were applied to the submitted claim.

. . .

(c)  BCBSMT insureds under policies issued or renewed in the State of Montana, who (i) were injured in an automobile or premises accident; and (ii) did not submit a claim for dates of service on or after December 29, 2000 through December 31, 2008 (or on whose behalf a claim was not submitted) to BCBSMT for medical expenses arising from the automobile and/or premises accident.[39]

The two settlement agreement definitions of "Class" cover any and all claims that were or could have been denied due to the contract exclusionary language. Under the Settlement Agreement affirmed by the Montana Supreme Court, all members of those classes have released all of their benefits due claims against CFM. Plaintiffs' proposed Class (b) cannot possibly contain anything other than previously released claims. Numerosity is thus zero. The requirement is clearly not met.

///

///

---

[39] Doc. 187-7 at 3.

13

ORDERED:

Plaintiffs' Motion for Class Certification[40] is DENIED.

DATED this 27th day of December, 2016.

*Sam E. Haddon* (signature)
SAM E. HADDON
United States District Judge

---

[40] Doc. 184.